**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X

~~John Doe~~Manny Zayrov,

                   Plaintiff,

        - against -

Life Time, Inc. f/k/a Life Time Fitness, Inc. d/b/a Life Time Fitness Club, LTF Club Management Company, LLC d/b/a Life Time Fitness, LTF Operation Holdings, Inc., LTF Club Operations Company, Inc. d/b/a Life Time Fitness, Ahmed ~~Doe~~Mayan, and Jack Doe,

                   Defendants.

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X

~~1~~2:25-cv-~~4100 (DLI) (ARL)~~

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

*JURY TRIAL DEMANDED*

~~John  Doe~~Manny Zayrov (hereinafter "~~Doe~~Zayrov" or "Plaintiff"), by and through his attorneys, Sage Legal LLC, as and for his complaint against Life Time, Inc. f/k/a Life Time Fitness, Inc. d/b/a Life Time Fitness Club (hereinafter "Life Time"), LTF Club Management Company, LLC d/b/a Life Time Fitness ("LTF Club"), LTF Operation Holdings, Inc., LTF Club Operations Company, Inc. d/b/a Life Time Fitness ("LTF OH") (Life Time, LTF Club, and LTF OH collectively hereinafter the Corporate Defendants"), Ahmed ~~Doe~~Mayan (hereinafter "Ahmed"), and Jack Doe ("Jack") (Ahmed and Jack collectively hereinafter the "Individual Defendants") (the Corporate Defendants and ~~the~~ Individual Defendants hereinafter the "Defendants") hereby respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1.    ~~Doe,~~Plaintiff brings this action against Defendants for: (i) violations of 42 U.S.C § 1981 ("Section 1981"); (ii) discrimination and retaliation based on religion in violation of Title II of the Civil Rights Act of 1964 ("Title II") (42 U.S.C. § 2000e) and the New York State Human Rights Law ("NYSHRL") (New York Executive Law § 296); (iii) the New York State Constitution

for violations of his civil rights; (iv) assault and battery; (v) negligent supervision; and (vi) negligent hiring and retention.

2.      Plaintiff respectfully seeks injunctive relief under Title II, monetary damages under the NYSHRL, and all available relief and damages for his Section 1981 and New York Constitution claims against the Defendants for their intentional acts of discrimination based on religion in treating Plaintiff differently concerning the terms, conditions, and privileges of his gym membership with the Corporate Defendants as well as in ultimately terminating his membership and banning him for life from the Corporate Defendants' facilities, all on account of his religion.

3.      Plaintiff's lifetime ban from Life Time has resulted in significant emotional distress and economic harm.

### JURISDICTION

4.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, because it arises under Title II and Section 1981.

5.      This court has supplemental jurisdiction over plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367(a) because the state law claims arise under a common nucleus of operative facts in that they stem from Plaintiff's discriminatory treatment and lifetime ban, just like his federal claims.

### VENUE

6.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3), because the unlawful discriminatory practice was committed in the Eastern District of New York.

### PARTIES

7.      Plaintiff resides in Queens County within the State of New York.

2

8.    Upon information and belief, Life Time is a New York corporation with corporate headquarters located in Garden City, New York within the County of Nassau.

9.    Upon information and belief, Life Time maintains offices and does business in Nassau County, New York.

10.    Life Time is a place of public accommodation as defined by Title II and the NYSHRL.

11.    Upon information and belief, LTF Club is a New York limited liability company with corporate headquarters located in Garden City, New York within the County of Nassau.

12.    Upon information and belief, LTF Club maintains offices and does business in Nassau County, New York.

13.    LTF Club is a place of public accommodation as defined by Title II and the NYSHRL.

14.    Upon information and belief, LTF OH is a New York corporation with corporate headquarters located in Garden City, New York within the County of Nassau.

15.    Upon information and belief, LTF OH maintains offices and does business in Nassau County, New York.

16.    LTF OH is a place of public accommodation as defined by Title II and the NYSHRL.

17.    Upon information and belief, Ahmed is an individual who resides in Nassau County within the State of New York.

18.    At all relevant times and upon information and belief, Ahmed was and remains a front desk manager for the Corporate Defendants.

3

19.    Upon information and belief, Jack is an individual who resides in Nassau County within the State of New York.

20.    At all relevant times and upon information and belief, Jack was a porter for the Corporate Defendants.

**FACTS**

21.    Plaintiff is an adult male of the Jewish faith.

22.    Plaintiff is a practicing attorney.

23.    Particularly in light of his career, ~~Doe~~Plaintiff relied on the use of the Corporate Defendants' facilities as a means to manage the stress associated with same.

24.    In December 2022, ~~Doe~~Plaintiff subscribed to a membership with the Corporate Defendants at their Garden City, NY facility.

25.    Prior to this time, Plaintiff was a member of Life Time from in or about the Summer of 2018 at the same facility, whereupon he regularly continued to frequent the facility as a guest for years until he obtained a membership in December 2022.

26.    From 2018 until late 2024, a period of over six (6) years, ~~Doe~~Plaintiff enjoyed access to the facility without incident.

27.    In or about 2023, Ahmed began to work at the front desk.

28.    Over time, Ahmed was the regular person to man the front desk in the evenings when Plaintiff would regularly visit the facility.

29.    ~~His~~Ahmed's role is to serve as the gatekeeper to the facility by ensuring that members and permitted guests may enter but to keep others who are not entitled to access out.

30.    Ahmed is a member of the Muslim faith who flaunts his religion by reading the Quran at the front desk while he is working.

4

31.     Ahmed has displayed a history of discrimination against members of the Jewish faith throughout his tenure for the Corporate Defendants.

32.     For example, Ahmed selectively enforces LifeTime's policies based on a guest's religion by enforcing the rule prohibiting guests of members of the Jewish faith after 8:00 PM on weekends, but relaxing those rules for guests of members of the Muslim faith.

33.     On or about October 26, 2024, Plaintiff arrived at the gym with a guest wearing a yarmulka and requested a one-time courtesy extension for late entry.

34.     Plaintiff is aware that such accommodations had been granted in similar circumstances to other members.

35.     However, Plaintiff's guest was denied entry by Ahmed, while Plaintiff was originally permitted to enter.

36.     Ahmed's refusal was discriminatory, as he admitted to enforcing policies selectively when Plaintiff challenged his decision.

37.     Specifically, when Plaintiff questioned Ahmed's motives, his behavior escalated, and Plaintiff was then barred from entering.

38.     Just one day later, Plaintiff's membership was suspended without any investigation or due process.

39.     Plaintiff contacted LifeTime to complain about this unfair suspension, whereupon it was reinstated the following day.

40.     Thereafter, on December 14, 2024, Plaintiff was physically assaulted by a Lifetime Fitness employee while attempting to use the shower before closing time while Plaintiff was naked with only a towel nearby.

41.     Although approximately six (6) others members or guests were permitted to shower without interference, Plaintiff was aggressively confronted by three (3) LifeTime employees, including Ahmed, right by the showers, causing Plaintiff to fear for his safety.

42.     During this incident, one (1) employee forcibly pressed his forearm against Plaintiff's bare chest, causing Plaintiff to lose his balance.

43.     The other two (2) employees joined in harassing and intimidating Plaintiff while he was vulnerable and partially unclothed.

44.     Plaintiff's attempts to report the incident were dismissed and delayed.

45.     On January 5, 2025, it came to Plaintiff's attention that Ahmed allowed a guest who is not a member who was also named Ahmed—who is also Muslim—entry after hours in violation of the rules enforced against Plaintiff and his Jewish friend.

46.     Initially, Ahmed denied entry to him, but immediately changed his stance upon learning that the guest is of the Muslim faith, whereupon Ahmed allowed him entry.

47.     This blatant favoritism underscores the discriminatory practices Plaintiff has faced and demonstrates a clear pattern of discriminatory bias against Plaintiff and other Jewish patrons.

48.     Since these incidents, Plaintiff has learned that other Jewish members have raised similar complaints about discriminatory treatment at LifeTime by Ahmed.

49.     On several occasions, Ahmed also made inappropriate comments about ~~Doe's~~Plaintiff's religion.

50.     For example, in dismissing ~~Doe's~~Plaintiff's complaints, Ahmed flippantly stated to ~~Doe~~Plaintiff "I read your three (3) books of Moses."

51.     In addition, Ahmed marginalized ~~Doe~~Plaintiff while treating similarly situated ~~employees~~patrons more favorably who did not share the same religion as ~~Doe~~Plaintiff.

6

52. For example, Ahmed openly stated in front of ~~Doe's~~Plaintiff's guest, "I feel bad for anyone that has to deal with [~~Doe~~Plaintiff]," causing ~~Doe~~Plaintiff embarrassment and demonstrating Ahmed's discriminatory animus toward ~~Doe~~Plaintiff and other members of the Jewish faith.

53. ~~Doe~~Plaintiff frequently made complaints about Ahmed, but to no avail.

54. For example, on or about October 28, 2024, ~~Doe~~Plaintiff complained to the General Manager about Ahmed's discriminatory treatment.

55. Specifically, ~~Doe~~Plaintiff told the General Manager that Ahmed was selectively enforcing rules against Jewish members while relaxing the rules for members of the Muslim faith.

56. The General Manager responded by denying that Ahmed ever allowed any guest in after hours, which was untrue based on Plaintiff's direct observations.

57. Plaintiff similarly complained about the December 2024 incident at least four (4) separate times, all to no avail.

58. Specifically, Plaintiff contacted the General Manager via email and by phone to discuss this incident.

59. In response, the General Manager called Plaintiff simply to tell him that he was banned; there was no discussion or investigation by Defendants, nor did they care to hear Plaintiff's side of the story, further demonstrating their discriminatory animus.

60. Plaintiff similarly complained about the January 2025 incident via email.

61. After playing phone tag with Plaintiff over the course of several days, Defendants contacted Plaintiff by phone merely to tell him they received his letter and the investigation is closed.

62.     As a result of ~~Doe's~~Plaintiff's complaints to the General Manager, Defendants subjected ~~Doe~~Plaintiff to unlawful retaliation.

63.     In particular, they suspended his account and, later, entered a lifetime ban against Plaintiff.

64.     Only a few weeks after ~~Doe~~Plaintiff complained of discrimination, Defendants summarily banned ~~Doe~~Plaintiff.

65.     Defendants provided no justification for banning ~~Doe~~Plaintiff.

**COUNT ONE**

**Religion Discrimination in Violation of Title II of the Civil Rights Act of 1964**

**(42 U.S.C. §§ 2000a *et seq.*)**

66.     ~~Doe~~Plaintiff repeats and realleges paragraphs 1 through 65 hereof, as if fully set forth herein.

67.     ~~Doe~~Plaintiff is a member of the Jewish faith.

68.     Defendants regularly made discriminatory comments to ~~Doe~~Plaintiff and his guests regarding their religion.

69.     In addition, Defendants marginalized ~~Doe~~Plaintiff and his Jewish guests while treating non-Jewish members and guests more favorably.

70.     ~~Doe~~Plaintiff suffered due to Defendants' unlawful discriminatory actions, and is entitled to equitable relief in the form of enjoining Defendants from continuing to ban Plaintiff from their facilities, and permit him equal access.

71.     Defendants intentionally violated ~~Doe's~~Plaintiff's rights under Title VII, with malice or reckless indifference.

**COUNT TWO**

8

**Discrimination in Violation of the NYSHRL in a Place of Public Accommodation**

**New York Executive Law § 296**

72.    ~~Doe~~Plaintiff repeats and realleges paragraphs 1 through ~~78~~72 hereof, as if fully set forth herein.

73.    The Defendants, as a place of public accommodation under the NYSHRL, instituted, implemented, maintained, and enforced unlawful discriminatory policies targeted against Jewish patrons.

74.    These unlawful discriminatory policies included providing preferential treatment and better customer service to non-Jewish patrons, banning Jewish patrons for alleged violations of rules while turning a blind eye to the violations of non-Jewish patrons, and denying the same level of service to Jewish patrons as provided to non-Jewish patrons.

75.    These policies are in violation of the NYSHRL as the Defendant discriminated against Jewish patrons on the basis of their religion.

76.    The Defendants' consistent conduct towards Plaintiff and other Jewish patrons constitutes a continuing violation under the law.

77.    As a consequence of the Defendants' discriminatory policies against Jewish patrons, Plaintiff has been the victim of unlawful discrimination and sustained conscious physical and emotional pain and suffering, as well as emotional distress, shock, fright, and humiliation.

78.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial.

**COUNT THREE**

**Retaliation in Violation of the NYSHRL in a Place of Public Accommodation**

**New York Executive Law § 296**

9

79.    ~~Doe~~Plaintiff repeats and realleges paragraphs 1 through 78 hereof, as if fully set forth herein.

80.    When Plaintiff made complaints to Defendants about religion discrimination at the Defendants' facilities, he engaged in protected activity under the law.

81.    Plaintiff's complaints to Defendants about religion discrimination occurred in or about October 2024, December 2024, and January 2025.

82.    In response to the Plaintiff's complaints, the Defendants unlawfully banned Plaintiff from using their facilities.

83.    The Defendants' termination of Plaintiff's account constituted an adverse retaliatory action.

84.    The timing between Plaintiff's complaints of religion discrimination and the Defendants' ban of Plaintiff give rise to an inference that the Defendants retaliated against Plaintiff for making the aforesaid complaints.

85.    As a consequence of the Defendants' termination of Plaintiff's membership in response to his complaints of religion discrimination, Plaintiff has been the victim of unlawful retaliation and sustained conscious physical and emotional pain and suffering, as well as emotional distress, shock, fright, and humiliation.

86.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial.

**COUNT FOUR**

**Assault and Battery under State Law**

87.    ~~Doe~~Plaintiff repeats and realleges paragraphs 1 through ~~93~~86 hereof, as if fully set forth herein.

10

88.     The aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of the intent, carelessness and recklessness of Defendants when Ahmed, Jack, and other agents of Defendants did suddenly and without provocation, did physically assault and batter Plaintiff, herein causing Plaintiff to sustain damages; in that Defendants Ahmed and Jack did conduct themselves in a wanton, willful, reckless and heedless manner without regard to the safety of the Plaintiff herein; in that said Defendants were physically abusive; in behaving in a disorderly manner; in using unnecessary, excessive and unlawful touching against the Plaintiff; in willfully and maliciously assaulting and battering the Plaintiff herein.

89.     Defendants Ahmed and Jack intended to cause the Plaintiff to apprehend imminent harmful contact from Defendants Ahmed and Jack.

90.     Defendants' Ahmed and Jack actions caused the Plaintiff to reasonably apprehend such a contact.

91.     Defendants Ahmed and Jack did further offensively touch, assault and batter the Plaintiff without his consent.

92.     Plaintiff has been damaged thereby.

93.     As a result of Defendants' Ahmed and Jack's acts of assault and battery in violation of the above statute, Plaintiff has been damaged in an amount to be determined at the time of trial.

**COUNT FIVE**

**Negligent Supervision under State Law**

94.     ~~Doe~~Plaintiff repeats and realleges paragraphs 1 through ~~100~~93 hereof, as if fully set forth herein.

95.     The Corporate Defendants were negligent in hiring Ahmed and Jack.

11

96.    Prior to Ahmed's and Jack's abuse of Plaintiff, the Corporate Defendants had actual and/or constructive notice that Ahmed and Jack posed a danger to Jewish patrons and should not have been permitted to work in light of their racist and hostile demeanor towards Jewish patrons.

97.    The Corporate Defendants failed to perform an appropriate inquiry into Ahmed and Jack's background prior to hiring them to work in a position where they would be working with individuals.

98.    The Corporate Defendants breached their duty of care and were careless and negligent in failing to conduct a reasonable, careful and prudent investigation into the past work history of Ahmed and Jack, and had they done so, they would have discovered that Ahmed and Jack should not be hired for a position dealing with members of the public and should not be placed in a position of trust and confidence.

99.    The Corporate Defendants' duty of care to Plaintiff included a duty not to retain employees like Ahmed and Jack who used their positions to discriminate against patrons based on their religion like they did with Plaintiff.

100.    The Corporate Defendants knew or should have known that Ahmed and Jack were discriminating against members of the Jewish faith and failed to take any steps to stop the abuse or prevent harm to Plaintiff.

101.    The Corporate Defendants knew or should have known that Ahmed and Jack were discriminating against members of the Jewish faith such as Plaintiff.

102.    The Corporate Defendants knew or should have known of Ahmed and Jack's propensity to discriminate against members of the Jewish faith.

103.    The Corporate Defendants should have terminated Ahmed and Jack's employment.

12

104.    The Corporate Defendants negligently failed to terminate Ahmed and Jack's employment.

105.    The Corporate Defendants are liable to Plaintiff as a result of their recklessness, official tolerance and deliberate indifference to the harm caused to Plaintiff by Ahmed and Jack.

106.    The Corporate Defendants were wanton, reckless, and deliberately indifferent to abuse of Plaintiff by Ahmed and Jack.

107.    The Corporate Defendants' disregard of Plaintiff's rights in permitting Ahmed and Jack to discriminate against members of the Jewish faith, including Plaintiff, on the grounds of Corporate Defendants' facilities, after they knew or should have known that Ahmed and Jack were discriminating against members of the Jewish faith, including Plaintiff, rises to the level of willful and/or reckless disregard of Plaintiff's rights.

108.    The Corporate Defendants consciously disregarded a substantial and unjustifiable risk of harm to Plaintiff when they permitted Ahmed and Jack to discriminate against members of the Jewish faith, including Plaintiff.

109.    By reason of the foregoing, Plaintiff sustained physical and psychological injuries, including, but not limited to, severe emotional distress, confusion, injuries, including, but not limited to, severe emotional distress, confusion, humiliation, fright, anxiety, a severe shock to his nervous system, and has been caused to suffer physical pain and mental anguish, emotional and psychological damage as a result thereof.

110.    By reason of the foregoing, the Corporate Defendants are liable to Plaintiff for punitive and exemplary damages.

### COUNT SIX

### Negligent Hiring and Retention under State Law

13

111.    DoePlaintiff repeats and realleges paragraphs 1 through 93110 hereof, as if fully set forth herein.

112.    The Corporate Defendants were negligent in hiring Ahmed and Jack.

113.    Prior to Ahmed and Jack's abuse of Plaintiff, the Corporate Defendants had actual and/or constructive notice that Ahmed and Jack the Corporate Defendants had actual and/or constructive notice that Ahmed and Jack posed a danger to Jewish patrons and should not have been permitted to work in light of their racist and hostile demeanor towards Jewish patrons.

114.    The Corporate Defendants failed to perform an appropriate inquiry into Ahmed and Jack's background prior to hiring them to work in a position where they would be working with individuals.

115.    The Corporate Defendants breached their duty of care and were careless and negligent in failing to conduct a reasonable, careful and prudent investigation into the past work history of Ahmed and Jack, and had they done so, they would have discovered that Ahmed and Jack should not be hired for a position dealing with members of the public and should not be placed in a position of trust and confidence.

116.    The Corporate Defendants' duty of care to Plaintiff included a duty not to retain employees like Ahmed and Jack who used their positions to discriminate against patrons based on their religion like they did with Plaintiff.

117.    The Corporate Defendants knew or should have known that Ahmed and Jack were discriminating against members of the Jewish faith and failed to take any steps to stop the abuse or prevent harm to Plaintiff.

118.    The Corporate Defendants knew or should have known that Ahmed and Jack were discriminating against members of the Jewish faith such as Plaintiff.

14

119.    The Corporate Defendants knew or should have known of Ahmed and Jack's propensity to discriminate against members of the Jewish faith.

120.    The Corporate Defendants should have terminated Ahmed and Jack's employment.

121.    The Corporate Defendants negligently failed to terminate Ahmed and Jack's employment.

122.    The Corporate Defendants are liable to Plaintiff as a result of their recklessness, official tolerance and deliberate indifference to the harm caused to Plaintiff by Ahmed and Jack.

123.    The Corporate Defendants were wanton, reckless, and deliberately indifferent to abuse of Plaintiff by Ahmed and Jack.

124.    The Corporate Defendants' disregard of Plaintiff's rights in permitting Ahmed and Jack to discriminate against members of the Jewish faith, including Plaintiff, on the grounds of Corporate Defendants' facilities, after they knew or should have known that Ahmed and Jack were discriminating against members of the Jewish faith, including Plaintiff, rises to the level of willful and/or reckless disregard of Plaintiff's rights.

125.    The Corporate Defendants consciously disregarded a substantial and unjustifiable risk of harm to Plaintiff when they permitted Ahmed and Jack to discriminate against members of the Jewish faith, including Plaintiff.

126.    By reason of the foregoing, Plaintiff sustained physical and psychological injuries, including, but not limited to, severe emotional distress, confusion, injuries, including, but not limited to, severe emotional distress, confusion, humiliation, fright, anxiety, a severe shock to his nervous system, and has been caused to suffer physical pain and mental anguish, emotional and psychological damage as a result thereof.

127.    By reason of the foregoing, the Corporate Defendants are liable to Plaintiff for punitive and exemplary damages.

16

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

A. Issue injunctive relief by way of an Order requiring Defendants to reinstate Plaintiff's membership to the Corporate Defendants' facilities;

B. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action;

C. Award to Plaintiff compensatory damages;

D. Award to Plaintiff punitive damages; and

E. Grant Plaintiff such additional or alternative relief as the Court deems just, equitable, and proper.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated: Jamaica, New York
July 23, 2025April 19, 2026                    Respectfully submitted,
**SAGE LEGAL LLC**

    /s/ Emanuel Kataev, Esq.
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Plaintiff*
*John DoeManny Zayrov*

> **Formatted:** French (France)

17